**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELECHI J. CHIBUNDU,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-7530** |
| | : | |
| **JANE DOE, DETECTIVE, *et al.*,** | : | |
| **Defendants.** | : | |

# MEMORANDUM

**GALLAGHER, J.** **OCTOBER 23, 2026**

Plaintiff Kelechi J. Chibundu, who is currently incarcerated at SCI Dallas, initiated this *pro se* civil action alleging his rights were violated during his arrest and pretrial detention on state-court criminal charges. Chibundu seeks leave to proceed *in forma pauperis*. For the following reasons, the Complaint will be dismissed. Chibundu may file an amended complaint if he can cure the deficiencies noted below.

## I. FACTUAL ALLEGATIONS[1]

Chibundu seeks to bring claims under federal and state law. Named as Defendants are Detective Jane Doe, Police Officer John Doe, Civilian Jane Doe, Chinasa Chibundu,[2] the Philadelphia Police Department, the City of Philadelphia, Curran-Fromhold Correctional Facility

[1] The factual allegations in this Memorandum are taken from the Complaint, which is composed of the court's standard form for use by self-represented litigants, as well as a hand-written supplement (ECF No. 2 ("Compl.")). Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the sequential pagination supplied to the filings by the CM/ECF docketing system.

[2] Chibundu describes Chinasa Chibundu as someone who is "formerly recognized as a close relative" and Civilian Jane Doe as "Chinasa's intimate partner." (*See* Compl. at 27.)

("CFCF"), Nazareth Hospital, and the 35th Police District. (Compl. at 1-2, 11-12.) As relief, Chibundu seeks $106 million in damages. (*Id.* at 51-57.)

The events underlying Chibundu's claims began on October 20, 2020, in Philadelphia. (*See, e.g., id.* at 14, 15, 17, 21, 25, 27, 29, 30, 33, 34, 41, 45.) He alleges as follows: Chibundu and Chinasa Chibundu were having a "private conversation involving family issues" at Chibundu's residence on North 20th Street when Civilian Jane Doe, who was also at the residence, interrupted the conversation "with her opinion." (*Id.* at 21, 27.) Chibundu told Civilian Jane Doe that the conversation was not her concern. (*Id.* at 21.) In response, Civilian Jane Doe had a "verbally abusive outburst" and approached Chibundu "saying things like "[k]eep acting like you don't hear me you b**** a** n*****," "watch this, I'm going to f*** him up," and "I'm a slap the s*** out of you." (*Id.*) Civilian Jane Doe then pushed Chibundu down the stairs, causing his phone to break. (*Id.*) As he screamed in agony, Civilian Jane Doe repeatedly punched Chibundu in the face while grabbing his neck, ripped his shirt, and broke a gold chain he was wearing. (*Id.*) "Eventually, Civilian Jane Doe stood up and said, 'I'm going to stab this n*****,' while reaching for a bookbag." (*Id.*) Chibundu limped out of the house before Civilian Jane Doe "returned with an item that appeared to be a knife and began to scream for help." (*Id.* at 21-22.)

Chibundu saw Police Officer John Doe patrolling the area around the residence on North 20th Street when he "was limping in agony due to being tortured in his residence prior to acknowledging the officer." (*Id.* at 17, 22.) Chibundu initiated contact with Officer John Doe "with the intention of receiving assistance." (*Id.* at 17.) Officer John Doe exited his patrol vehicle and asked Chibundu about "the reported incident." (*Id.*) Chibundu described the incident, although he was "scared" at that time and "had a hard time explaining in detail." (*Id.*)

He contends that he suffered visible scratches and scars on his face and his need for medical attention "should have been obvious." (*Id.*) After briefly speaking with Chibundu, Officer John Doe spoke with Chinasa and Civilian Jane Doe. (*Id.* at 17-18, 22.) According to Chibundu, Chinasa and Civilian Jane Doe "created a myth involving [Chibundu] possessing a firearm, terroristic threats, and much more." (*Id.* at 18.) Chibundu asserts that Chinasa and Civilian Jane Doe were the aggressors, but they were asked by Officer John Doe if they wanted to press charges against Chibundu. (*Id.*) He contends that Chinasa and Civilian Jane Doe "created a myth" and falsely accused Chibundu of possessing a firearm, making terroristic threats, and committing assault. (*Id.* at 22, 27.) He also states that Officer John Doe searched his residence, the perimeter of the residence, and a vehicle that was at Chibundu's residence.[3] (*Id.* at 18, 22, 27.) Chibundu's neighbor "spoke on [his] behalf" and stated that the allegations did not fit Chibundu's character. (*Id.* at 19, 22, 27.) He also contends that Officer John Doe did not locate the alleged firearm "because it did not exist." (*Id.* at 19.) Chibundu informed Officer John Doe that his leg was injured but Officer John Doe did not provide Chibundu with medical assistance, or the opportunity to file charges against Chinasa or Civilian Jane Doe. (*Id.* at 18, 19.) Instead, Chibundu claims that Officer John Doe arrested him based on "false allegations, without investigating the incident reported or assisting [Chibundu] with medical attention." (*Id.* at 18.) Officer John Doe transported Chibundu to the 35th District police station on North Broad Street. (*Id.* at 22-23.)

---

[3] Chibundu states that he is a certified automotive technician and the vehicle belonged to his client, Imir Scott, who was waiting to have his car repaired. (Compl. at 18-19, 22, 27.) According to Chibundu, "Imir further explained that he 'did not see Kelechi with a gun.'" (*Id.* at 27.)

Detective Jane Doe interrogated Chibundu at the police station. (*Id.* at 14.) He "fully cooperated throughout the duration of the interrogation" and was asked about injuries he sustained during the incident. (*Id.*) Chibundu described to Detective Jane Doe injuries to his face and "left leg/knee." (*Id.*) He states that he was processed and charged after the interrogation.[4] (*Id.*) Chibundu asserts that he did not receive medical attention while in the custody of the Philadelphia Police Department and that no charges were filed against Civilian Jane Doe or Chinasa even after he described his injuries during the interrogation. (*Id.*)

From the 35th District Police Station, Chibundu was transferred to CFCF. (*Id.* at 23.) His injuries were immediately noted during the intake process at CFCF and x-rays were taken there. (*Id.*) He also was taken to Nazareth Hospital for further medical treatment. (*Id.*) Chibundu was diagnosed with a "rupture of the left patellar and confirmed it with multiple MRI's and/or CAT scans." (*Id.*) He was transported back to CFCF to await trial. (*Id.*) His injuries required later surgery. (*Id.* at 33.)

Although he does not indicate the date of the preliminary hearing, Chibundu states that Chinasa and Civilian Jane Doe presented testimony that contradicted their prior statements on October 20, 2020. (*Id.* at 24.) He contends that they committed perjury and obstructed justice, that "multiple charges were dismissed and/or reduced due to lack of evidence" and that he "remained pending trial for a total of 4 years until charges were dismissed in 2024."[5] (*Id.*)

---

[4] Chibundu states that he was charged on docket numbers MC-51-CR-0020473-2020 and MC-51-CR-0020474-2020. (Compl. at 23.) A current search of those docket numbers produces no results.

[5] It is unclear how long Chibundu was in custody on the charges that underly the Complaint. He states that he was released from CFCF when he "paid a total of nominal bail of $50,000 for both docket numbers" so that he could obtain "proper medical assistance." (Compl. at 28, 38, 43-44.) He also states that the charges were dismissed in 2024. (*See id.* at 4.) It appears, however, that Chibundu has been in custody since January 25, 2022, on unrelated

Chibundu also asserts that he missed a hearing in family court because he was not transported from CFCF on the hearing date and "a restraining order was activated in his absence." (*Id.* at 24, 28, 38.) Chibundu contends that the restraining order was based on the false allegations presented by Chinasa and Civilian Jane Doe, and the restraining order prevented him from returning to his home upon his release from CFCF. (*Id.* at 24-26, 39.) He further contends that their statements were defamatory and that Chinasa and Civilian Jane Doe physically attacked him, causing injury. (*Id.* at 25-26, 28.)

With respect to the "Philadelphia Police Department" as a Defendant, Chibundu alleges that he was maliciously arrested by Officer John Doe, who was assigned to the 35th District, and that the arrest was malicious because officers acknowledged his injuries but offered no medical assistance. (*Id.* at 29.) He further claims that Detective Jane Doe was "involved in the malicious arrest as well because" she did not provide him with medical attention after Chibundu informed her of his injuries. (*Id.*) He contends that upon arrival at CFCF, nurses "immediately noticed" his abnormal knee cap during the intake process, which demonstrates that police officers were deliberately indifferent to his medical needs while in their custody. (*Id.* at 30.) According to Chibundu, the Philadelphia Police Department should be held accountable for the actions of the officers of the 35th District. (*Id.* at 30-31.) He further claims that they failed to "properly

---

charges and that those charges are the basis for his current incarceration at SCI Dallas. A review of the publicly available state-court dockets reveals that homicide and gun charges were filed against Chibundu on January 26, 2022, based on a January 11, 2022 incident. *See Commonwealth v. Chibundu*, MC-51-CR-0001274-2022 (MC Philadelphia); *Commonwealth v. Chibundu*, CP-51-CR-0004595-2022 (C.P. Philadelphia). After a jury trial, Chibundu was found guilty on July 18, 2024, of third-degree murder, carrying a firearm without a license, carrying a firearm in Philadelphia, and possession of an instrument of crime. *See Commonwealth v. Chibundu*, CP-51-CR-0004595-2022 (C.P. Philadelphia). On November 22, 2024, Chibundu was sentenced to an aggregate term of twenty-five to fifty years of incarceration. *See Commonwealth v. Chibundu*, 2026 WL 396246, at *2 (Pa. Super. Ct. Feb. 12, 2026).

investigate all aspects during [the] preliminary phase" and that he was wrongfully detained. (*Id.* at 31-32.)

With respect to the City of Philadelphia, Chibundu contends that he informed "multiple officers about the injuries he sustained during the incident reported" and did not receive medical attention while in the custody of Philadelphia police. (*Id.* at 33.) He contends that charges were improperly brought against him and that he should have had an opportunity to file charges "against his aggressors." (*Id.*) He further asserts that the City is responsible for, *inter alia*, the improper training of the officers that participated in his arrest and interrogation; for discriminating against him due to his gender because women are treated better than men by the justice system; and for prosecuting him, such that he was "faced with double jeopardy because technically he was tried for same incident, multiple times" by the family court proceeding for which he was found in default for failure to appear and for the criminal charges. (*Id.* at 33-36.)

As to CFCF, Chibundu states that nurses realized during intake that his knee was injured, took x-rays, and noted the need for further diagnostic testing at a hospital at a later time. (*Id.* at 37.) He states that CFCF housed him in general population despite his injuries. (*Id.*) He was "eventually transported to Nazareth Hospital" where imaging confirmed that his left patellar had been ruptured. (*Id.* at 38.) Chibundu was informed that the required surgery could not be performed at Nazareth Hospital. (*Id.*) He contends that the correctional officers who accompanied him to the hospital refused to transport him to another hospital because "nobody got time for that, my shift about to be over. Suck it up. Don't do the crime if you can't do the time." (*Id.*) He was taken back to CFCF and again placed in general population in a multi-purpose cell, rather than a housing unit designed for inmates who are physically disabled or require medical attention. (*Id.* at 38-42.) He reiterates that while at CFCF, he was not

transported to family court to appear for a hearing, and as a result, he was found in default and a restraining order was entered against him. (*See id.*) He "did not discover information regarding 'family court' until he was released from CFCF by paying a total of $50,000 nominal bail" so that he could seek proper medical treatment. (*See id.*) Due to the restraining order that prevented him from returning to the North 20th Street residence, Chibundu became homeless. (*See id.*)

Chibundu states that he was transported from CFCF to Nazareth Hospital by "multiple correctional officers" on "a date that will be disclosed through proper investigation." (*Id.* at 43.) He asserts that after diagnostic testing, he was diagnosed with a rupture of the left patellar, was told that the surgery could not be performed at Nazareth Hospital and was "medically cleared . . . to be housed in [CFCF] among general population." (*Id.*) Chibundu contends that he posted nominal bail to have the necessary surgery in a timely manner. (*Id.* at 43-44.) According to Chibundu, he should not have been cleared for housing in the general population because he was not able to climb to the top bunk, walk, or climb stairs. (*Id.* at 44.) He asserts, *inter alia*, that the hospital was deliberately indifferent for not seeking proper medical treatment for him and for releasing him to be housed in the general population, and that the hospital should have recommended that an orthopedist examine his injuries. (*Id.*)

With regard to the 35th Police District, Chibundu contends that Officer John Doe maliciously arrested him which caused wrongful imprisonment and that he suffered from selective enforcement because he did not have the opportunity to press charges because he was a man. (*Id.* at 47-48.) He further contends that he became homeless upon his release from CFCF because 35th District officers did not conduct a proper investigation and they failed to provide him with medical attention. (*Id.*) According to Chibundu, he could not visit his mother at the

house that he grew up in due to the restraining order and that she sold the house as a result. (*Id.* at 48.)

## II. STANDARD OF REVIEW

The Court will grant Chibundu leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if it is frivolous, malicious, it fails to state a claim for relief, or seeks relief from an immune defendant. Pursuant to § 1915(e)(2)(B)(ii), the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As Chibundu is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). Nonetheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (citation omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the

---

[6] Since Chibundu is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

conclusion to an ultimate legal issue."). Additionally, a court may dismiss a complaint based on an affirmative defense when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). Further, the Court must review the Complaint and dismiss it if subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III. DISCUSSION

Chibundu invokes a litany of legal concepts under federal and state law in his lengthy Complaint. (*See generally* Compl. at 1-57.) Even under a liberal reading of the Complaint, however, Chibundu has failed to present a plausible claim.

### A. Federal Law Claims

Chibundu asserts claims for violations of his rights secured by the United States Constitution. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." (citation omitted)). The personal involvement of each defendant in the alleged constitutional violation is a required element of a § 1983 claim, so a plaintiff must allege how each defendant was involved in the events giving rise to the claims. *See Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Local governments and municipalities are considered persons under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Liberally construing the allegations contained therein, the Complaint is best understood as presenting Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution,[7] and Fourteenth Amendment claims of selective enforcement[8] and deliberate

---

[7] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[C]laims for false arrest, false imprisonment, and malicious prosecution share a common core: the Fourth Amendment right to be free from arrest, detention, and charges without probable cause." *Kendig v. Stolar*, 173 F.4th 466, 471 (3d Cir. 2026). "As the Supreme Court has explained, claims for false arrest challenge 'detention without legal process,' while malicious prosecution involves seizure 'pursuant to legal process.'" *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024) (first quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007); then quoting *Thompson v. Clark*, 596 U.S. 36, 42 (2022)). "If the plaintiff is held pursuant to legal process, then his proper claim is a malicious prosecution claim, which is a claim involving the 'wrongful institution of legal process' (not the absence of legal process)." *Voorhis v. Ginkel*, No. 24-2859, 2025 WL 2556241, at *2 (3d Cir. Sept. 5, 2025) (*per curiam*) (quoting *Wallace*, 549 U.S. at 390).

[8] "Selective prosecution is a form of discriminatory law enforcement that has been held to violate the Equal Protection Clause of the Fourteenth Amendment since *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), which held officials liable for 'illegal discrimination' when they 'applied and administered' a facially neutral law 'with an evil eye and an unequal hand.'" *Davis v. Malitzki*, 451 F. App'x 228, 234 (3d Cir. 2011). To plead a plausible claim of selective prosecution, a plaintiff must allege facts that: "first, that persons similarly situated were not prosecuted; second, that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion or 'some other arbitrary factor.'" *Id.* (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989) (*per curiam*)). "Persons are similarly situated under the Equal Protection Clause when they are alike in 'all relevant respects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). To successfully assert a selective prosecution claim, a plaintiff will have to allege that the defendants "intentionally and purposefully discriminated against him by failing to prosecute" a similarly situated individual. *See Regan v. Upper Darby Township*, No. 06-1686, 2009 WL 650377, at *9 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010).

Selective enforcement is a different Fourteenth Amendment claim. *Dique v. New Jersey State Police*, 603 F.3d 181, 188 n.10 (3d Cir. 2010) (holding that selective prosecution and selective enforcement "are different Fourteenth Amendment claims"). "When a plaintiff's grievance is directed solely at police misconduct, the claim should be for selective enforcement."

indifference to serious medical needs.[9] He also asserts *Monell* liability against the City of Philadelphia based on allegations that the City failed to properly train the officers who arrested and interrogated him.[10] (*See* Compl. at 34-35.) With the exception of the malicious prosecution claim, to the extent Chibundu seeks to present one, the Court need not consider whether he has

---

*Davis v. Malitzki*, 451 F. App'x 228, 234 n.11 (3d Cir. 2011) (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)). Nevertheless, the standards "are virtually identical." *Id.*; *see also United States v. Whitfield*, 649 F. App'x 192, 196 n.11 (3d Cir. 2016) ("[T]he prima facie elements for both selective prosecution and selective enforcement are the same: discriminatory effect and discriminatory intent.").

[9] To state a constitutional claim based on the failure to provide medical treatment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (holding conditions of confinement claims brought by pretrial detainees are governed by the Fourteenth Amendment).

[10] Chibundu uses other legal terms and lists other constitutional provisions as the bases for his claims, such as "improper application of due process," "cruel and unusual punishment for suffering physical damage for a prolonged period of time," and "freedom of speech due to physical damage inflicted upon the plaintiff resulting from a private conversation," (*see, e.g.,* Compl. at 15, 20, 26), but he does not allege any facts that would support such violations. A passing reference to a legal provision is insufficient to bring a plausible constitutional claim before the Court. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court." (citation modified) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))). In any event, such § 1983 claims would be time-barred for the reasons the Court will discuss.

Chibundu also seems to suggest that a Protection From Abuse order was entered against him based on the October 20, 2020 events, and therefore, that the criminal charges that were filed against him caused him to be "faced with double jeopardy because technically he was tried for same incident, multiple times." (*See* Compl. at 15, 36.) The United States Court of Appeals for the Third Circuit has explained that the Double Jeopardy Clause of the Fifth Amendment, among other things, "protects against multiple punishments for the same offense." *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013) (quoting *Ohio v. Johnson*, 467 U.S. 493, 498 (1984)). "In order for multiple punishments to constitute a double jeopardy violation, the multiple charged offenses must be the same in law *and* in fact. *Id.* (citing *United States v. Felton*, 753 F.2d 276, 278 (3d Cir. 1985)). In contrast to the state criminal charges that Chibundu states were initiated against him, a proceeding to obtain a Protection From Abuse order under Pennsylvania law is civil in nature. *See C.R.-F. v. Dep't of Hum. Servs.*, 153 A.3d 438, 443 n.9 (Pa. Commw. Ct. 2017). Accordingly, Chibundu's reliance on the Double Jeopardy Clause as a basis for a claim is misplaced.

plausibly alleged a basis for any of the § 1983 claims because they are time-barred. Further, as discussed more fully below, Chibundu has not alleged sufficient facts in support of a malicious prosecution claim for the Court to determine whether such claim is time-barred or plausible. There are numerous other deficiencies in Chibundu's federal law claims.

**1. Time-Barred Claims**

It is apparent from the face of the Complaint that the false arrest, false imprisonment, selective enforcement, and deliberate indifference to serious medical needs claims are barred by the statute of limitations. The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Pennsylvania's two-year statute of limitations applies to these claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). While state law governs the applicable statute of limitations, federal law controls when a § 1983 claim accrues. *Wallace*, 549 U.S. at 388. A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique*, 603 F.3d at 185 (citation modified). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The limitations period governing claims of false arrest based on a warrantless arrest, or false imprisonment, accrues at the time the litigant became detained pursuant to legal process. *See Wallace*, 549 U.S. at 397 ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) ("A claim for false

arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more."); *Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61, 64 (3d Cir. 2021) (*per curiam*) (noting that false arrest and imprisonment claims begin to run at the time the plaintiff was "detained pursuant to legal process"). The events giving rise to Chibundu's false arrest and false imprisonment claims occurred on October 20, 2020, and accrued once he was held pursuant to process, *i.e.*, once he was brought before a judge on the charges against him, which would have occurred within a few days of his arrest. *See Montgomery*, 159 F.3d at 126 ("[T]he two-year limitation period for Montgomery's section 1983 false arrest and false imprisonment claims began to run on . . . the night of Montgomery's arrest and detention."); *see also Mister v. Burkhart*, No. 26-821, 2026 WL 442419, at *3 (E.D. Pa. Feb. 17, 2026) (describing arraignment process in Pennsylvania). Chibundu commenced the present case in September 2026, nearly six years after the accrual of these claims.

Similarly, the selective enforcement and deliberate indifference to serious medical needs claims are untimely. The Court understands the selective enforcement claim to be based on allegations that Chibundu was charged in connection with the October 20, 2020 incident, and Chinasa Chibundu and Civilian Jane Doe were not charged, because "women [are] treated better than men by the 'justice system.'" (*See, e.g.*, Compl. at 13, 35.) The deliberate indifference to serious medical needs claims are based on allegations that Chibundu was not given needed medical attention during his arrest, interrogation, transportation to CFCF, and liberally construing the Complaint, during the time he was in custody at CFCF before he was released on bail. (*See, e.g.*, Compl. at 14-15, 17-20, 23-24, 29-35, 37-42, 45-48.) Thus, the selective enforcement and medical deliberate indifference claims are based on events that occurred on October 20, 2020, or soon thereafter, and would have accrued at that time. *See Smith v.*

*Municipality of Lycoming Cnty.*, 335 F. App'x 147, 149 (3d Cir. 2009) (*per curiam*) (stating that prisoner alleging deliberate indifference to medical needs knew, or had reason to know, of his alleged mistreatment when it occurred); *Dique*, 603 F.3d at 188 (claim for selective enforcement accrues at the time "the wrongful act resulting in damages occurs"); *Patterson v. Strippoli*, 639 F. App'x 137, 141 (3d Cir. 2016) ("Because a selective prosecution claim under the Equal Protection Clause may be established by 'a single discriminatory act,' *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1186-87 (7th Cir. 1986), the claim based on it accrues at the time of the discriminatory or irrational enforcement action.").

Chibundu's Complaint was entered on the docket on September 29, 2026. However, it is considered filed on September 13, 2026, at the earliest, because that is the date he signed his initial pleading. *See* Compl. at 10; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing."). Since Chibundu did not file this civil action until September 2026—nearly six years after he was allegedly subjected to false arrest, false imprisonment, selective enforcement, or any medical deliberate indifference based on his time in custody before he was released on nominal bail and sought treatment for his injuries—these claims are time barred.[11] *See, e.g.,*

[11] Chibundu does not allege the date when he was released from custody after posting nominal bail. However, it must have been before January 25, 2022, which is the date that he was taken into custody in connection with the criminal prosecution in *Commonwealth v. Chibundu*, MC-51-CR-0001274-2022 (M.C. Philadelphia); *Commonwealth v. Chibundu*, CP-51-CR-0004595-2022 (C.P. Philadelphia). Thus, the events that form the basis of his selective enforcement and medical deliberate indifference claims must have occurred before January 25, 2022, which is clearly more than two years prior to the filing of the instant Complaint.

To the extent the Complaint could be construed as alleging illegal search or seizure claims based on the October 20, 2020 events, such claims also would be time-barred. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 860-61 (3d Cir. 2014) (holding that an illegal search claim accrues when plaintiff knew or should have known about the search and

*DiGiesi v. Twp. of Bridgewater Police Dep't*, No. 24-1768, 2025 WL 1218254, at *1 (3d Cir. Apr. 28, 2025) ("The alleged false arrest and imprisonment happened on March 13, 2016; thus the complaint filed on July 1, 2019, was well past the two-year mark."). It is also apparent from the Complaint that tolling does not save Chibundu's untimely claims.[12] Accordingly, the false arrest, false imprisonment, selective enforcement, and medical deliberate indifference claims will be dismissed for failure to state a claim because they are time-barred.

---

seizure); *Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (*per curiam*) ("[T]he statute of limitations for claims of wrongful searches and seizures would have begun to run at the time of the searches and seizures . . . .").

A malicious prosecution claim "accrues when criminal proceedings end in the plaintiff's favor." *Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) (citation omitted)). It is unclear when, if at all, the charges against Chibundu ended in his favor, but the Complaint alleges that the charges were dismissed in October 2024. (*See, e.g.*, Compl. at 4, 24, 26, 28, 31, 40, 41.) Because the Complaint suggests that a malicious prosecution claim may be timely, the Court will address that claim below.

[12] Pennsylvania allows for tolling based on the "discovery rule," which "delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause," *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 144 (3d Cir. 1997) (internal quotation marks and citation omitted), and based on fraudulent concealment, *see* 42 Pa. Cons. Stat. § 5504; *Aivazoglou v. Drever Furnaces*, 613 A.2d 595, 598 (Pa. Super. Ct. 1992); *see also Poole v. Marks*, 441 F. App'x 854, 857 (3d Cir. 2011) (*per curiam*) ("In Pennsylvania, judicial extensions of the statute of limitations are expressly forbidden absent fraud or its equivalent." (citations omitted)). Federal law, which only applies if Pennsylvania law "actually conflicts with federal law or policy," *Kach*, 589 F.3d at 643, permits equitable tolling of § 1983 claims: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum," *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000) (citation omitted). "Tolling is [an] extraordinary remedy, and is proper only when the principles of equity would make [the] rigid application [of a limitation period] unfair." *D.J.S.-W ex rel. Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (alterations in original) (internal citations and quotations omitted). The facts alleged in the Complaint do not support a reasonable basis for equitable tolling under any of these standards.

**2. Malicious Prosecution Claim**

The only federal claim presented in the Complaint that may be timely is Chibundu's malicious prosecution claim, to the extent he seeks to present one. To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)). A malicious prosecution claim under § 1983 has five elements: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (quotation marks and citation omitted). "Probable cause exists if there is a fair probability that the person committed the crime at issue." *Id.* at 199 (quotations and citation omitted). A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.").

Chibundu's Complaint does not allege what crime or crimes he was charged with committing in October 2020, why probable cause was lacking for the criminal charges filed against him, why bringing those charges was malicious, and he does not allege the personal involvement of any Defendant in initiating the charges. Further, while Chibundu states that the charges on state court docket numbers "MC-51-CR-0020473-2020" and "MC-51-CR-0020474-

2020" were dismissed, he does not clearly allege when the dismissal occurred.[13] As stated *supra*, the Court must determine whether the Complaint contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Chibundu has not presented sufficient facts in support of a malicious prosecution claim. Accordingly, any malicious prosecution claim, to the extent presented by Chibundu, is undeveloped and will be dismissed. *See, e.g., Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing, *inter alia*, malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all allegations against them in the underlying criminal proceedings were false); *see also Slack*, 2025 WL 2753671 at *1-3 (affirming dismissal of malicious prosecution claim "because there is prima facie evidence of probable cause for [plaintiff's] arrest and prosecution").

---

[13] (*See, e.g.*, Compl. at 4 (stating "date dismissed charges in 2024 approx. October"), 24 (stating "[m]ultiple charges were dismissed and/or reduced due to lack of evidence" and "charges were dismissed in 2024"), 26 (stating "criminal charges were dropped in 2024"), 28 (stating "[t]he charges were dropped in 2024"), 31 (stating "[a]ll charges related to both docket numbers were dismissed in 2024"), 40 (stating "[t]he criminal charges for the incident reported on 10/20/20 were dismissed in 2024"), 41 (stating "charges were dropped in 2024"), 42 (stating "the charges that the plaintiff [was] charged with in 2020 were not dismissed until 2024").)

### 3. Municipal Liability[14]

A municipality, such as the City of Philadelphia, is not vicariously liable under § 1983 for the actions of its employees on a theory of *respondeat superior*. *See Monell*, 436 U.S. 691; *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (stating "local governments are responsible only for 'their own illegal acts'" (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986))). There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quotation marks and citations omitted). "While policy and custom claims and failure or inadequacy claims are closely related, 'the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected.'" *Godson v. City of Philadelphia*, No. 24-6461, 2025 WL 1970251, at *5 (E.D. Pa. July 16, 2025) (quoting *Forrest*, 930 F.3d at 106). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). *Monell* claims are also subject to a two-year statute of limitations. *Vurimindi v. MHM Corr. Servs., Inc.*, No.

[14] Chibundu brings claims against the City of Philadelphia, as well as claims against Officer John Doe and Detective Jane Doe in their official capacities. Claims against municipal officials named in their official capacities are indistinguishable from, and duplicative of, claims against the municipality that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citation omitted). Thus, the official capacity claims are duplicative of the claims against the City and are dismissed on this additional basis.

26-3061, 2026 WL 2594495, at *2 (E.D. Pa. Sept. 2, 2026) ("In Pennsylvania, *Monell* claims are governed by the Commonwealth's two-year statute of limitations for personal injury cases." (citations omitted)).

As discussed above, Chibundu's § 1983 claims for false arrest, false imprisonment, selective enforcement, and medical deliberate indifference are barred by the statute of limitations. Consequently, any *Monell* claim based on these alleged constitutional violations is also time-barred. Further, as described above, Chibundu does not allege sufficient facts to establish a timely malicious prosecution claim. Thus, Chibundu has not alleged any underlying constitutional violation for which *Monell* liability can attach. Further, even if Chibundu had sufficiently alleged a malicious prosecution claim, he does not allege any facts to show that the City of Philadelphia's policies or customs caused that alleged constitutional violation, or that the constitutional violation was caused by a failure or inadequacy by the City that reflects a deliberate or conscious choice. Accordingly, Chibundu's claims against the City of Philadelphia will be dismissed.

**4. Other Pleading Deficiencies**

Chibundu repeatedly asserts that his constitutional rights were violated because the police failed to properly investigate Chinasa Chibundu and Civilian Jane Doe and press charges against them. (*See, e.g.*, Compl. at 13, 32, 47.) Such allegations do not state a claim to relief because, generally, "[t]here is no constitutional right to a police investigation." *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) (internal quotation marks and citation omitted); *see also Ford v. Kenney*, No. 22-5059, 2023 WL 349180, at *7 (E.D. Pa. Jan. 19, 2023) (noting that "there is no constitutional right to have crimes investigated by the police"). Further to the extent that Chibundu intends to assert a due process claim based on the non-prosecution of

Chinasa or Civilian Jane Doe, putting aside any statute of limitations issue, he fails to state a claim, because an individual citizen "generally has no due process right to police protection or enforcement of state laws," *Fullman v. City of Philadelphia*, No. 23-3073, 2024 WL 1637550, at *2 (3d Cir. Apr. 15, 2024) (*per curiam*) (citing, *inter alia*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005); *Burella v. City of Philadelphia*, 501 F.3d 134, 146 (3d Cir. 2007)), and does not have a "judicially cognizable interest in the prosecution or nonprosecution of another," *id.* (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Chibundu's § 1983 claims against Nazareth Hospital, Chinasa Chibundu, and Civilian Jane Doe also cannot proceed because they are not state actors. Whether a defendant is acting under color of state law—*i.e.*, whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (internal quotations and alteration omitted). Nothing in the Complaint plausibly supports the conclusion that the actions of Nazareth Hospital, Chinasa Chibundu, or Civilian Jane Doe may be fairly treated as that of the State itself under these tests.

Furthermore, the Philadelphia Police Department and the "35th District Precinct" are not appropriate defendants in a § 1983 matter. A police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.; see also Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir. 1988))); *Brown v. Keystone Hum. Servs.*, No. 22-2571, 2023 WL 1962061, at *2 (3d Cir. Feb. 13, 2023) (*per curiam*) ("[M]unicipal police departments are governmental sub-units that are not distinct from the municipalities of which they are a part."); *Martin v. Red Lion Police Dep't*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality). Moreover, agencies of the City of Philadelphia, such as the Philadelphia Police Department, do not have a separate legal existence from the City. *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (observing that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Gremo v. Karlin*, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005) (dismissing City of Philadelphia Police Department and the City of Philadelphia Police Department Northeast Detective Division).

**B. State Law Claims**

Chibundu alleges throughout the Complaint that the various Defendants committed torts against him. Because the Court has dismissed Chibundu's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims he seeks to raise. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *see also Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met).

Chibundu has not met his burden. Chibundu states that he resided in Philadelphia, Pennsylvania, prior to his arrest. (Compl. at 17.) He does not allege the citizenship of the

Defendants, but is suing the City of Philadelphia among others, which suggests that diversity is lacking. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue and all state law claims will be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss the Complaint as follows: (1) the malicious prosecution claim will be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim; (2) the false arrest, false imprisonment, selective enforcement, and deliberate indifference to serious medical needs claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim because they are time-barred; and (3) all state law claims will be dismissed without prejudice for lack of subject matter jurisdiction, *see Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (stating that a dismissal for lack of jurisdiction should normally be without prejudice).

Chibundu will not be given leave to amend the claims that are time-barred, as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002). Chibundu may file an amended complaint if he can cure the deficiencies with respect to the claims that are dismissed without prejudice.[15] An appropriate Order follows regarding amendment.

**BY THE COURT:**

***/s/ John M. Gallagher***

**JOHN M. GALLAGHER, J.**

---

[15] Any amended complaint naming the City must satisfy the statute of limitations and the pleading requirements of *Monell*.